# In the United States Court of Federal Claims

No. 26-632
(Filed: November 10, 2026)
(NOT FOR PUBLICATION)

| | |
|---|---|
| **EL HAQ MALAK BEY,** | * |
| Plaintiff, | * |
| v. | * |
| **THE UNITED STATES,** | * |
| Defendant. | * |

*El Haq Malak Bey*, *pro se*, of Milwaukee, WI.

*Oliver J. McDonald*, Trial Attorney, Commercial Litigation Branch, Civil Division, Department of Justice, for Defendant.

**MEMORANDUM OPINION AND ORDER**

**SOMERS**, Judge.

*Pro se* Plaintiff, El Haq Malak Bey, alleges that the United States government violated a federal treaty, entitling him to monetary relief. In response to Plaintiff's complaint, the government filed a motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1) of the Rules of the United States Court of Federal Claims ("RCFC") or, alternatively, for failure to state a claim under RCFC 12(b)(6). After reviewing Plaintiff's amended complaint and the parties' briefing on the motion to dismiss, it is clear to the Court that Plaintiff lacks standing over the claims he raises, which are, in any event, barred by the Tucker Act's six-year statute of limitations. Furthermore, Plaintiff references a treaty, statutes, a regulation, an agency notice, and a constitutional provision that are not money mandating sources of law under the Tucker Act and, therefore, are beyond the Court's jurisdiction.

For the reasons discussed below, the Court lacks subject matter jurisdiction over Plaintiff's complaint; accordingly, the government's motion to dismiss is granted. *See* RCFC 12(h)(3) ("If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action.").

## BACKGROUND

Plaintiff filed his amended complaint on May 4, 2026. *See generally* ECF No. 7. In addition to representing himself, Plaintiff claims to be "member and principal representative of the Okla Falaya Band of Choctaw Freedmen[1] . . . ." ECF No. 7 at 3. In his amended complaint, Plaintiff alleges, *inter alia*, that the United States government breached Article 3 of the Treaty with the Choctaw and Chickasaw, 1866, 14 Stat. 769 (April 28, 1866) ("the 1866 Treaty" or "the Treaty"). *Id.* Plaintiff's claims stem from his belief that Article 3 of the 1866 Treaty "contains a specific, money-mandating trust obligation . . . ." *Id.* at 7. Article 3 of the Treaty states

> that if the [Choctaw and Chickasaw] tribes made Freedmen members of their tribes within two years, the United States would apportion $300,000 from a trust fund. The adopted Freedmen would receive forty acre allotments once the Choctow and Chickasaw Indians made their selections of land. If the tribes did not adopt their Freedmen, the United States would not apportion the $300,000 from the trust fund. Instead, the Government would hold the funds in trust for those Freedmen the Government would move to other parts of the Indian Territory. Freedmen who did not leave voluntarily were not entitled to any portion of the $300,000 trust and were not entitled to the forty acre allotments.

*Harvest Inst. Freedman Fed'n v. United States*, 80 Fed. Cl. 197, 199 (2008), *aff'd*, 324 F. App'x 923 (Fed. Cir. 2009) (footnote omitted). However, "[n]either tribe adopted Freedmen within two years. The United States did not voluntarily remove any Freedmen to other parts of the Indian Territory." *Id.*

As an alleged descendant of the Freedmen, Plaintiff asserts that he is a beneficiary of the 1866 Treaty's guarantee of a $300,000 trust with interest and forty-acre allotment. ECF No. 7 at 8, 18. Plaintiff agrees that the two-year deadline imposed by the Treaty passed without the Choctaw and Chickasaw Nations enacting this legislation and without the United States government paying the $300,000 with interest to the Freedmen or giving them forty acres apiece. *Id.* at 10–12. However, Plaintiff disagrees that the United States did not remove the Freedmen from the Nations, instead claiming that "the United States removed the Freedmen from the territory by dissolving Indian Territory" through the Curtis Act, Pub. L. No. 55-517, 30 Stat. 495 (1898); Five Civilized Tribes Act, Pub. L. No. 59-129, 34 Stat. 137 (1906); Oklahoma Enabling Act, Pub. L. No. 59-234, 34 Stat. 267 (1906); and through the establishment of Oklahoma as a state. ECF No. 7 at 13. Thus, Plaintiff alleges that the government's refusal to disburse money and land to the Freedmen and/or their descendants is a breach of its duty under the Treaty. *Id.* at 18. Plaintiff asks the Court for relief in the sum of $66,822,409,676.19, but very generously offered to settle for $18,000,000,000, a "[f]ormal acknowledgement by the United States of the breach of Article 3 of the Treaty of 1866," and "[r]ecognition of the Okla Falaya Band of Choctaw Freedmen as an identifiable group of American Indians under federal law[.]" *Id.* at 21–23.

---

[1] The term "Freedmen" refers to the formerly enslaved people within the Choctaw and Chickasaw Nations.

In response to Plaintiff's amended complaint, the government filed a motion to dismiss under RCFC 12(b)(1) for lack of subject matter jurisdiction and RCFC 12(b)(6) for failure to state a claim. *See* ECF 18 at 1. In its motion, the government notes that Plaintiff may not bring a claim under the Indian Tucker Act because "a pro se litigant may not represent an 'identifiable group of American Indians' under 28 U.S.C. § 1505 or other statutes." *Id.* at 9 (quoting 28 U.S.C. § 1505). Also, the government asserts that Plaintiff lacks the requisite injury to have standing under the Tucker Act because the beneficiaries to the trust and land described in the Treaty of 1866 "never came into existence." *Id.* at 10. The government contends that for the Freedmen to become beneficiaries of the trust and land, the United States would have had to "remove any Freedmen willing to be removed from the Choctaw Nation," which did not happen. *Id.* Moreover, the government argues that Plaintiff's claim is barred by the statute of limitations because "the complaint is approximately 154 years too late." *Id.* at 11. Furthermore, the government asserts that Plaintiff does not allege damages based on a money-mandating source of law as required by the Tucker Act because "the 1866 Treaty 'did not vest property rights in their Freedmen and did not impose an obligation on the Government.'" *Id.* at 13 (quoting *Harvest Inst.*, 80 Fed. Cl. at 201).

Finally, the government claims that Plaintiff's complaint fails to state a claim. *Id.* at 14. In addition to asserting that Plaintiff failed to identify money-mandating source of law, the government states that Plaintiff has no basis for entitlement to relief. *Id.* at 15. The government asserts that "the conditions precedent to the funds being held in trust for the benefit of Choctaw Freedmen did not occur." *Id.* at 15.(citing *Choctaw Nation of Indians v. United States*, 318 U.S. 423, 425 (1943)).

On June 23, 2026, Plaintiff filed a response to the government's motion to dismiss. *See generally* ECF No. 19. First, Plaintiff contends that his action can proceed under the Tucker Act, regardless of whether it can proceed under the Indian Tucker Act. ECF No. 19 at 4. But Plaintiff does not contest that his claim cannot proceed under the Indian Tucker Act. *Id.* Second, Plaintiff claims that he has standing as defined in *Lujan v. Defenders of Wildlife*. *Id.* at 4–5 (citing 504 U.S. 555, 560–61 (1992)). But whether Plaintiff is a true beneficiary of the trust money and land, such that breach of the duties allegedly imparted by the Treaty on the government could constitute an injury, Plaintiff argues is a merits issue. *Id.* Next, Plaintiff contends that he has, in fact, identified money-mandating sources of law, including "the Treaty of 1866, 28 U.S.C. § 1491(a)(1), 25 U.S.C. §§ 117a–117c, 25 U.S.C. §§ 1401–1408, 43 U.S.C. §§ 851, 856, and 868, 25 C.F.R. Part 115, IIM trust-fund administration, IRS Notice 2015-67, and federal fiduciary-control principles recognized by the Supreme Court." *Id.* at 6. Plaintiff raises a school trust breach claim that he expressly waived in his amended complaint[2] and requested leave to amend his complaint again. *See* ECF Nos. 7 at 3; 19 at 7–8. Plaintiff also asserts that his claims are not time-barred, arguing that his claims "arise from continuing fiduciary duties, continuing

[2] "This Amended Petition narrows and perfects the original filing. It removes the Section 16 school trust land theory and focuses exclusively on the claim that this Court is best positioned to adjudicate: the breach of Article 3 of the Treaty with the Choctaw and Chickasaw of 1866 a specific, money mandating trust obligation in which the United States agreed to invest and hold $300,000 at an interest rate of not less than five percent in trust for the benefit of Choctaw Freedmen." ECF No. 7 at 3.

federal control, and separate failures to account for, manage, distribute, or pay trust funds within the limitations period." ECF No. 19 at 9. "In the alternative, Plaintiff invokes delayed accrual, accrual suspension, fiduciary concealment, lack of accounting, and equitable principles to show that dismissal is premature." *Id.* at 10. Then, Plaintiff affirms that his claims are plausible and that the government's arguments are simply matters of "disputed facts, contested historical interpretations, and merits defenses." *Id.* at 11. Lastly, Plaintiff requests that "[i]f the Court concludes that any allegation requires greater specificity, Plaintiff respectfully requests leave to amend rather than dismissal with prejudice." *Id.*

In its reply, the government affirmed its position that Plaintiff's claim should be dismissed under RCFC 12(b)(1) for lack of subject matter jurisdiction and RCFC 12(b)(6) for failure to state a claim. *See generally* ECF No. 20. The government's reply reiterated its assertions that (1) Plaintiff lacks standing under the Tucker Act, (2) Plaintiff's claims are barred by the statute of limitations, and (3) Plaintiff failed to identify a money-mandating source of law. *Id.*

Since the government's reply, Plaintiff has filed a plethora of additional motions and other documents with the Court, including requesting leave and limited jurisdictional discovery. *See generally* ECF Nos. 23, 24, 26, 29, 30, 32, 33, 35, 38, 39, and 42.

## DISCUSSION

### A. Legal Standard

Under RCFC 12(b)(1), the Court must dismiss any claim that does not fall within its subject matter jurisdiction. In considering a motion to dismiss for lack of subject matter jurisdiction, the Court must accept as true all factual allegations made by the non-moving party and draw all logical inferences in the light most favorable to that party. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009).

This Court, like all federal courts, is one of limited jurisdiction. "[T]he United States, as sovereign, 'is immune from suit save as it consents to be sued . . . and the terms of its consent to be sued in any court define that court's jurisdiction to entertain the suit.'" *United States v. Testan*, 424 U.S. 392, 399 (1976) (omission in original) (quoting *United States v. Sherwood*, 312 U.S. 584, 586 (1941)). Thus, this Court's authority to grant relief in a case is constrained by the scope of the government's waiver of sovereign immunity under the Indian Tucker Act and the Tucker Act. *See* 28 U.S.C. §§ 1491, 1505; *Testan*, 424 U.S. at 399 (quoting *Sherwood*, 312 U.S. at 587–88); *United States v. Mitchell*, 445 U.S. 535, 540 (1980); *McCaster v. United States*, No. 24-CV-2027, 2025 WL 2304705, at *4 (Fed. Cl. Aug. 11, 2025), *reconsideration denied*, No. 24-CV-2027, 2025 WL 2992380 (Fed. Cl. Oct. 23, 2025), *appeal docketed*, No. 26-1509 (Fed. Cir. Mar. 10, 2026) ("[T]he Indian Tucker Act, also a waiver of sovereign immunity, allows for 'any tribe, band, or other identifiable group of American Indians residing within the territorial limits of the United States' to bring suit in the Court of Federal Claims." (quoting 28 U.S.C. § 1505)). A constraint on the scope of that waiver is the statute of limitations, which expressly limits "the Tucker Act's waiver of sovereign immunity," *Hart v. United States*, 910 F.2d 815, 817 (Fed. Cir. 1990) (citing *Soriano v. United States*, 352 U.S. 270, 273–74 (1957)), and is an absolute, "jurisdictional" bar, *John R. Sand & Gravel Co. v. United States*, 552 U.S. 130, 134 (2008)

(internal quotation marks omitted) (quoting *Bowles v. Russell*, 551 U.S. 205, 210 (2007)). The Tucker Act's statute of limitations bars any claim that is not "filed within six years after such claim first accrues." 28 U.S.C. § 2501.

Moreover, "[t]he Tucker Act does not, of itself, create a substantive right enforceable against the United States. . . ." *Smith v. United States*, 709 F.3d 1114, 1116 (Fed. Cir. 2013) (citing *Ferreiro v. United States*, 501 F.3d 1349, 1351 (Fed. Cir. 2007)). Rather, to state a claim within this Court's Tucker Act jurisdiction, "the plaintiff must identify a separate contract, regulation, statute, or constitutional provision that provides for money damages against the United States." *Id.* Stated differently, a plaintiff must state a claim based on a provision that "can fairly be interpreted as mandating compensation by the Federal Government for the damages sustained," *United States v. Mitchell*, 463 U.S. 206, 216–17 (1983) (internal quotation marks omitted) (quoting *Testan*, 424 U.S. at 400), and is "reasonably amenable to the reading that it mandates a right of recovery in damages," *United States v. White Mountain Apache Tribe*, 537 U.S. 465, 473 (2003).

In addition, before invoking this Court's subject matter jurisdiction, a plaintiff must establish that he or she has standing. *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992) ("[T]he party invoking federal jurisdiction bears the burden of establishing [the] elements [of standing]."); *Castle v. United States*, 301 F.3d 1328, 1337 (Fed. Cir. 2002) ("Standing is a threshold jurisdictional issue, which . . . may be decided without addressing the merits of a determination."). First, a plaintiff must have suffered an "injury in fact—an invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical." *Lujan*, 504 U.S. at 560 (cleaned up). "Second, there must be a causal connection between the injury and the conduct complained of—the injury has to be 'fairly . . . trace[able] to the challenged action of the defendant, and not . . . th[e] result [of] the independent action of some third party not before the court.'" *Id.* at 560–61 (alterations in original) (quoting *Simon v. E. Ky. Welfare Rts. Org.*, 426 U.S. 26, 41–42 (1976)). "Third, it must be 'likely,' as opposed to merely 'speculative,' that the injury will be 'redressed by a favorable decision.'" *Id.* at 561 (quoting *Simon*, 426 U.S. at 38, 43).

Even if a plaintiff establishes subject matter jurisdiction, the Court must nonetheless dismiss the claim under RCFC 12(b)(6) if a plaintiff fails to "plead[ ] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007)). Therefore, a complaint lacking sufficient well-pleaded facts to "establish all elements of the cause of action" must be dismissed for failure "to state a claim on which relief can be granted." *Fisher v. United States*, 402 F.3d 1167, 1175–76 (Fed. Cir. 2005).

Finally, although the Court holds a *pro se* litigant's pleadings to "less stringent standards than formal pleadings drafted by lawyers," *Haines v. Kerner*, 404 U.S. 519, 520 (1972) (per curiam), "the leniency afforded to a *pro se* litigant with respect to mere formalities does not relieve the burden to meet jurisdictional requirements," *Minehan v. United States*, 75 Fed. Cl. 249, 253 (2007) (citations omitted). Accordingly, a *pro se* plaintiff still "bears the burden of establishing the Court's jurisdiction by a preponderance of the evidence." *Riles v. United States*,

93 Fed. Cl. 163, 165 (2010) (citing *Taylor v. United States*, 303 F.3d 1357, 1359 (Fed. Cir. 2002)).

## B. Analysis

Plaintiff's amended complaint fails to establish the Court's subject matter jurisdiction over his claims for at least four reasons: 1) Plaintiff is not permitted to pursue his claims under the Indian Tucker Act; 2) Plaintiff lacks standing under the Tucker Act; 3) Plaintiff's claims are barred by the statute of limitations; 4) Plaintiff's claims do not arise from a money-mandating source of law. Accordingly, the Court must dismiss Plaintiff's complaint. *See* RCFC 12(h)(3) ("If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action.").

First, Plaintiff may not pursue his claims under the Indian Tucker Act. The plain text of that Act makes this clear: only a "tribe, band, or other identifiable group" may pursue claims under the Indian Tucker Act. 28 U.S.C. § 1505. Plaintiff, proceeding *pro se*, filed his amended complaint "individually and as a member of the identifiable group . . . ." ECF No. 7 at 3. But, because Plaintiff has not made an appearance before this Court as an attorney, *see generally* ECF Nos. 7, 19, he cannot, pursuant to the rules of this Court, represent a group or tribe *pro se*. RCFC 83.1(a)(4) ("[P]ersons who are not attorneys may represent themselves but may not represent a corporation, an entity, or any other person in any proceeding before this court."); *see McCaster*, 2025 WL 2304705, at *5; *Williams v. United States*, 482 F. App'x 580, 582 (Fed. Cir. 2012). However, even if Plaintiff purported to represent only himself, an individual may not bring claims under the Indian Tucker Act. *Fields v. United States*, 423 F.2d 380, 383 (Ct. Cl. 1970) ("[S]ince the instant case is one brought by individual Indians and not a tribe, band, or identifiable group of Indians, we feel that defendant is correct in asserting that section 1505 does not apply to the present case."); *McCaster*, 2025 WL 2304705, at *6. Accordingly, Plaintiff cannot pursue his claims under the Indian Tucker Act.

Second, Plaintiff does not have standing to pursue his claims under the Tucker Act. Plaintiff contends that he is a beneficiary of trust money and land allotted by the Treaty of 1866 and is injured by the "deprivation of trust funds, distributions, accounting, and monetary benefits allegedly owed by the United States as trustee or fiduciary." ECF No. 19 at 5; *see* ECF No. 7 at 18. It is contested whether Plaintiff is even "among the group of descendants who would have benefitted from the trust . . . ." ECF No. 18 at 10; *compare id. with* ECF Nos. 7 at 18, *and* 19 at 9. But the issue of standing can be resolved without determining Plaintiff's tribal affiliations or lack thereof. This is because, as the United State Supreme Court has held, the Freedmen that Plaintiff alleges to be a descendant of are not beneficiaries of the Treaty of 1866:

> The Indian nations were to receive the $300,000 if they conferred upon the freedmen the rights expressed in the treaty. Failing to confer those rights, that sum was to be held in trust for all such freedmen, and only such freedmen, as should remove from the territory. The treaty was not complied with either by the Indians or the United States. No rights were conferred upon the freedmen; no freedmen were removed, and the statutes were enacted and the agreements were made that

> we have described. But those statutes and agreements gave no rights to the freedmen.

*United States v. Choctaw Nation*, 193 U.S. 115, 126 (1904); *see also Harvest Inst.*, 80 Fed. Cl. at 201 ("The Chickasaw and Choctow [*sic*] Treaty did not vest property rights in their Freedmen and did not impose an obligation on the Government."). Thus, because "[n]o rights were conferred upon the freedmen," *Choctaw Nation*, 193 U.S. at 126, even if Plaintiff were a Freedman, he could not demonstrate that he suffered an injury necessary to establish standing. *City of Los Angeles v. Lyons*, 461 U.S. 95, 101 (1983) ("Plaintiffs must demonstrate a 'personal stake in the outcome' in order to 'assure that concrete adverseness which sharpens the presentation of issues' . . . ." (quoting *Baker v. Carr*, 369 U.S. 186, 204 (1962)).

Third, Plaintiff's claim is untimely under 28 U.S.C. § 2501.[3] Pursuant to section 2501, "[e]very claim of which the United States Court of Federal Claims has jurisdiction shall be barred unless the petition thereon is filed within six years after such claim first accrues." 28 U.S.C. § 2501. "The date of ordinary accrual for a breach of a statutory or regulatory duty is the date when the wrong began." *Harvest Inst.*, 80 Fed. Cl. at 199 (citing *Menominee Tribe v. United States*, 726 F.2d 718, 721 (Fed. Cir. 1984)). Even assuming Plaintiff's position that the Treaty of 1866 guaranteed that "[i]f the Nations failed to adopt their Freedmen within two years – by July 10, 1868 – the $300,000 would be held by the United States for the use and benefit of such of said persons of African descent as the United States shall remove from the said territory," the six-year statute of limitations would have expired over a century ago. ECF No. 7 at 10. Plaintiff requests delayed accrual, citing "Government control over trust records, Government control over trust funds, failure to account, historical complexity, uncertainty concerning beneficiary status, and lack of access to information necessary to determine breach." ECF No. 19 at 10. But these allegations are unavailing, as are Plaintiff's attempts to argue that the continuing claims doctrine extended the six-year statute of limitations. ECF No. 7 at 23–24. "In order for the continuing claim doctrine to apply, the plaintiff's claim must be inherently susceptible to being broken down into a series of independent and distinct events or wrongs, each having its own associated damages." *Brown Park Ests.-Fairfield Dev. Co. v. United States*, 127 F.3d 1449, 1456 (Fed. Cir. 1997); *see Mitchell v. United States*, 10 Cl. Ct. 63, 73 (1986), *modified*, 10 Cl. Ct. 787 (1986), *supplemented*, 13 Cl. Ct. 474 (1987). Plaintiff's assertion that "[e]ach year the United States fails to invest, hold, or pay the $300,000 fund constitutes a new breach and a new accrual," ECF No. 7 at 24, is inconsistent with how this Court applies the continuing claim doctrine. *See Harvest Inst.*, 80 Fed. Cl. at 200 (holding each day land was not allocated did not constitute a distinct cause of action). Accordingly, Plaintiff's complaint must also be dismissed as time-barred.

---

[3] Plaintiff's assertion that his action is timely under 28 U.S.C. § 2502 is erroneous because section 2502 does not govern timeliness. Rather, section 2502 provides reciprocity to certain non-citizens who wish to bring suit in the United States Court of Federal Claims for claims that otherwise fall within the Court's subject matter jurisdiction. 28 U.S.C. § 2502; *see e.g. Huerta v. United States*, 548 F.2d 343, 344–45 (Ct. Cl. 1977) (explaining 28 U.S.C. § 2502 and engaging in a separate analysis of timeliness under 28 U.S.C. § 2501).

Finally, the Court's jurisdiction only extends to claims arising from money-mandating sources of law. 28 U.S.C. § 1491(a)(1). Plaintiff's amended complaint claims that he is entitled to monetary relief under the Treaty of 1866, the general trust doctrine, the Supremacy Clause, and the Indian Tribal Judgment Funds Use or Distribution Act. ECF No. 7 at 27–28. Plaintiff's response to the government's motion to dismiss adds to this list, "25 U.S.C. §§ 117a–117c, . . . 43 U.S.C. §§ 851, 856, and 868, 25 C.F.R. Part 115, IIM trust-fund administration, IRS Notice 2015-67, and federal fiduciary-control principles recognized by the Supreme Court." ECF No. 19 at 6. None of these are money-mandating sources of law. First, the Treaty of 1866, as established above, confers no rights onto the Freedmen, even assuming that Plaintiff is a descendant of the Freedmen. Second, as there is no entitlement to a trust of money or land under the Treaty of 1866, the general trust doctrine does not mandate relief. *See Harvest Inst.*, 80 Fed. Cl. at 200–201. Third, the Constitution's Supremacy Clause plainly does not mandate the payment of money. *Trevino v. United States*, 557 F. App'x 995, 998 (Fed. Cir. 2014) (citing *Hufford v. United States,* 87 Fed.Cl. 696, 702 (2009); *United States v. Connolly,* 716 F.2d 882, 887 (Fed. Cir. 1983) (en banc)). Fourth, the Indian Tribal Judgment Funds Use or Distribution Act[4] governs appropriations and plans for distributions of money already obligated "in satisfaction of judgments of the Indian Claims Commission or United States Court of Federal Claims." 25 U.S.C. § 1401. Fifth, 25 U.S.C. §§ 117a–117c only governs, *inter alia*, *how* funds are distributed to Indian Tribes. Sixth, 43 U.S.C. §§ 851, 856, and 868 discuss grants to land to which Plaintiff, as demonstrated, has no legal rights. Seventh, 25 C.F.R. Part 115 is a set of guidelines for the Secretary of Interior for carrying out existing "trust duties owed to tribes and individual Indians to manage and administer trust assets . . . ." 25 C.F.R. § 115.001 (2001). Eighth, IRS Notice 2015-67 pertains to income exclusions of "per capita distributions made from funds the Secretary of the Interior holds in a tribal Trust Account." I.R.S. Notice 2015-67, 2015-41 I.R.B 546, 546. Lastly, the existence of Individual Indian Money ("IIM") and "federal fiduciary-control principles recognized by the Supreme Court," ECF No. 19 at 6, are simply not "contract[s], regulation[s], statute[s], or constitutional provision[s] that provid[e] for money damages against the United States," *Smith*, 709 F.3d at 1116 (citing *Ferreiro*, 501 F.3d at 1351). Thus, Plaintiff's claims fail to identify any money-mandating source of law in support of his claims.

## CONCLUSION

For the foregoing reasons, the Court **GRANTS** the government's motion to dismiss Plaintiff's complaints for lack of subject matter jurisdiction. The Clerk shall enter **JUDGMENT** accordingly.

**IT IS SO ORDERED**.

s/ Zachary N. Somers
ZACHARY N. SOMERS
Judge

[4] 25 U.S.C. §§ 1401–1408.